WILLIAM M. CLARK, APPELLEE, v. COUNTY OF LANCASTER ET · AL., APPELLEES, IMPLEADED WITH CHARLES G. SHEELEY, APPELLANT.

FILED SEPTEMBER 17, 1903.   No. 13,051.

1. Appeal. On an appeal in equity the appellee is not concluded as to any matter directly involved . in the questions raised by the appellant.

2. ———. As to matters not necessarily involved in the appeal an appellee who enters no cross-appeal should be held concluded.

3. County Board: POWER TO CONTRACT. The limitation on the power of the county board to contract for bridge building to cost a sum not greater than the amount of money on hand in the county bridge fund derived from a levy of previous years and two-thirds of the levy of the current year, gives no authority to the board to take into account the levy of the current calendar year prior to the making of such levy. Until it is made there is no "levy of the current year."

4. ———: ———: PREREQUISITE. The adoption of plans and specifications is a necessary preliminary to advertising for and letting a contract by the year for the building of bridges, and such advertising and letting must be in accordance with the plans and specifications so adopted.

5. **Repairing Bridges.** There is no authority for the letting of annual contracts for repairing of bridges or for the doing of such repairing under an annual contract, where the amount exceeds $100.

6. **Injunction:** EQUITY. A court of equity will not enjoin the further execution of a contract and enjoin the prosecution of any claim for compensation for work and material already furnished in good faith under it, except on condition of the payment of a fair value for the work and material so furnished.

7. ——. Where defendant was proceeding under color of a lawful contract, the institution of an action to enjoin further proceedings under it, and the ordering of a temporary injunction on condition of the furnishing of a bond, which is not given, do not necessarily deprive the subsequent proceedings of defendant under the contract of their good faith and color of lawfulness.

APPEAL from the district court for Lancaster county: LINCOLN FROST, DISTRICT JUDGE. *Affirmed.*

*Lorenzo W. Billingsley, Robert J. Greene, Richard H. Hagelin, Jesse B. Strode* and *Edmund C. Strode,* for appellant.

*James L. Caldwell, William T. Stevens, Stephen B. Pound, Frank A. Boehmer, Lionel C. Burr* and *Elmer E. Spencer, contra.*

HASTINGS, C.

This is an injunction suit brought by the plaintiff, as a taxpayer of Lancaster county, to prevent the defendant, Sheeley, from building certain bridges, and from presenting any claim for pay for them or for materials or labor in them; to procure the canceling of his contract with the county commissioners for their erection, and to prevent his collecting a $3,000 warrant which had been allowed to him on account of them and was unpaid. It was also sought to enjoin the county commissioners from taking any such action, and the treasurer from paying the $3,000 warrant and from transferring from the general to the bridge fund any money of the county. It was also sought to have the county commissioners directed to consider the ordering of bridges in open session and to make a record

of their acts concerning that subject. The county was made a party presumably because of its interest in the contract which it was sought to have canceled.

The original petition was filed April 4 and, after alleging the corporate and official character of the parties, stated that the commissioners had entered into an unlawful contract with Sheeley; that the latter, as "first party, agrees to furnish all materials, and to construct and complete ready for travel such bridge work as said commissioners may order built over streams in said county during the ensuing twelve months. Said bridge work to be built according to the plans and specifications attached hereto and made a part of this contract, the same as if written at length herein, and to be the various lengths as ordered, to be built of such material as ordered, conforming to said above mentioned plans and specifications. And the said first party agrees to have the structure ready for travel within ninety days from date of order by said county commissioners. The first party agrees to promptly inspect and pass upon the work, and, in consideration of the materials and labor to be performed by the first party, the second party agrees to pay the first party the amounts set forth in the attached bids. Said payment to be made on completion of said bridge work as ordered, in warrants drawn on the county treasurer of said Lancaster county. The second party will, however, allow first party such estimate for material delivered as, in said second party's judgment, is proper and customary. The party of the first part shall within sixty days from date file a bond in the sum of $2,000, guaranteeing the faithful execution of this contract, with sureties satisfactory to said commissioners." That Sheeley had not given the bond; that on February 24, he had presented claims to the amount of $8,000 for materials under this contract, which had been allowed and two warrants, one for $5,000 and one for $3,000 issued to him, the larger of which had been paid; that these claims were fraudulently allowed; that no bridges had been ordered and the commissioners knew when allowing them

that no materials had yet been furnished; that there was
not to exceed $1,200 in the bridge fund of the county at the
time of their allowance; that about February 24, to pro-
vide funds to pay these claims, the commissioners directed
$4,000 to be transferred to the bridge from the general
fund, and dated their order March 12, 1902; and the money
was paid on the $5,000 warrant but was not paid for bridge
material; that two of the commissioners have issued or-
ders for bridges, when not in session, and without the
knowledge or assent of the chairman of the board; that de-
fendant was proceeding to erect bridges, as he claimed,
under this contract, to the amount of $22,600, upon such
orders, and at prices and an expense to the county greatly
more than was necessary or had been before paid.

On April 16 all the defendants except Tilton, the chair-
man of the board, and Knight, county treasurer, answered
by a general denial. On the same day the plaintiff, Clark,
filed an amended petition embracing all his former allega-
tions. In addition he alleged the following advertisement
for bridge bids:

"Notice is hereby given that sealed bids will be received
at the office of the county clerk at Lincoln, Lancaster
county, Nebraska, until 12 o'clock noon, Saturday, Febru-
ary 15, 1902, for the building of all bridges that shall be
ordered for the ensuing year. All bids shall be accom-
panied by plans and specifications and a certified check in
the sum of $500. The board of county commissioners re-
serve the right to reject any and all bids. Address all bids
to D. A. Frye, county clerk.

"Lincoln, Nebraska, January 22, 1902."

Also, that other parties made bids, but the Sheeley con-
tract resulted; that his bid was fraudulent and misleading
and not by the lineal foot, as the law requires, but for a
certain sum per lineal foot, and an additional amount for
substructure or superstructure; that his bid was not the
lowest and best, and that there was no authority to award
him the contract; that no plans and specifications were
previously adopted, and there was no power to let an

annual contract, and that the alleged one was unlawful and void.

On the 5th day of April notice had been given each of the defendants of the filing of the original petition and of the substance of its allegations, namely, that the contract of February 21 was unlawful and void, and that the allowance of $8,000 to Sheeley was also unlawful; that there was no power to make the contract and that it was the result of an unlawful combination of defendants, and that all proceedings under it would be asked to be enjoined. April 11 was set as the day for hearing. On that day the notice was filed but the hearing seems to have been deferred until April 22 and 23, after the filing of the amended petition. April 26 a temporary injunction was allowed against all defendants except the county and the treasurer. They were to be forbidden to construct or repair any more bridges under the contract, or to file claims for work done, and the commissioners were to be enjoined from allowing any claims and from ordering any more work done under the contract. This was conditioned upon the giving of a $5,000 bond, which was not done.

On May 27 defendants, Borgelt and Welton, county commissioners, again answered, admitting the official character of defendants, the advertising for bids and making of contract with Sheeley, the allowance of $8,000 to him and issuance of warrants for it, and the transfer of $4,000 from the general to the bridge fund. They deny plaintiff's other allegations. They say the contract was let in good faith on the lowest and best bid; that Sheeley had done a large amount of work under it and by orders from the board; that they are willing that an accounting be had between the county and Sheeley, and ask that it be had, and that plaintiff be cited to appear for that purpose.

In the meantime, apparently, a cross-petition had been filed by the county attorney, which does not appear in the transcript. It seems to have asked for an accounting between Sheeley and the county. At all events, on the same 27th day of May defendants, Borgelt and Welton, answered

such a cross-petition by setting up that they and defendant Tilton were the county board; that they represented the county and that the county attorney had filed his cross-petition without authority from them or from any taxpayer. They denied any collusion and fraud; said that all the work done by the contractor had been ordered by the board and was all needed, and was done for the lowest obtainable price. In this answer, too, they ask for an accounting on the basis of the contract and of the $8,000 paid.

Plaintiff replied to their answer by a general denial.

On June 26 the county attorney filed an amended cross-petition, alleging that the county maintained a courthouse and offices for the sessions of the county board; that the board advertised for bids on bridge building for the year 1902, and although the county board had adopted plans and specifications for the bridges to be built during the year, the advertisement called for bids to be "accompanied with plans and specifications"; that defendant Sheeley, thereupon, submitted his bid with plans and specifications; that the latter were in the form of "blue prints" and too voluminous to copy, but are referred to as a part of the cross-petition; that such procedure was unlawful, and no annual contract was authorized except upon the basis of the previously adopted plans and specifications, which each bidder could and must make the basis of his bid; that the county board pretended to adopt the defendant Sheeley's plans and unlawfully and fraudulenty pretended to accept his bid and enter into the contract with him and, without advertising for competition on any plans and specifications adopted by the board, and without reasonable care to secure competition and the letting of the contract to the lowest and best bidder; that the contract was signed by the commissioners each individually and is not binding upon the county.

The county attorney further says that the accepted bid was not the lowest and best one, that it was so declared arbitrarily and without consideration of others, in disre-

gard of the rights both of the other bidders and of the public, and without any opportunity to other bidders to compete upon the plans so attempted to be adopted, and such action was illegal and void; that the contract so made was in pursuance of a conspiracy to prevent competition, and contains unlawful provisions, fraudulently incorporated in it, to allow and pay estimates for materials delivered, and a provision for the contractor's filing a bond within sixty days instead of before entering upon the work; that the contractor, without first filing a bond as required by law, immediately entered upon the work and commenced to build and repair bridges, without any finding of the board that such work was necessary, and without any order locating or directing it, and without lawful authority from the county board. That the $5,000 and the $3,000 warrants were allowed, the first paid and the second outstanding, and both should be made a lien upon all materials and bridges furnished and made by the contractor; that no finding or order had ever been made by the board as to what bridges or repairs were necessary; that no record existed of any action of the county board as to any of the twenty-seven bridges claimed by the contractor to have been ordered under the contract; that any such orders, if given, were by individual members of the county board and of no binding effect on the county; that they were not acts of the board as a corporate body nor done at the court house, nor in any regular session of the board; that the defendant Sheeley had full notice of the invalidity of such pretended action of the members of the county board and of the amount of money on hand in the bridge fund, and that the contract when made was in excess of the funds and void; that the bids were purposely made deceptive, and were not for completed bridges at a given sum per lineal foot, but at such a sum for superstructure, with an addition for substructure, and were read and accepted by the board for completed bridges, and are grossly in excess of the ordinary price of such structures; that any bid for substructures, separately, was unlawful,

and because of this unlawful feature, fraudulently introduced into it, the contract should be annulled.

The county attorney further says that, since the commencement of the action, two of the commissioners attempted to ratify, and have made of record, orders for the twenty-seven bridges claimed by the contractor, and to add three more; but such attempt to legalize and carry out an unlawful private agreement, before made, is contrary to good morals and public policy, and is unlawful and void.

He alleged that the record, so attempted to be made, includes orders for repairs on bridges and for materials for that purpose; that no advertisement was made, no bids taken, no contract let, and no plans and specifications adopted for the repair of bridges for 1902; that the repairs attempted to be so provided for are greatly in excess of $100 in costs, and that Sheeley had no authority whatever to enter upon such work. He asked that Sheeley be required to set out in full all the items of his claims against the county for work under his contract, and that as to all parties claiming rights in the material or warrants an accounting to be had, if the court should hold that Sheeley had a right to compensation for his labor and materials employed upon the bridges.

He asked that the Columbia National Bank, which claimed an assignment of the $3,000 warrant, be made a party and required to show cause why it should not surrender it for cancelation, and that as a multiplicity of suits would evidently grow out of the transactions in regard to these bridges, unless the court should adjust the entire matter between the parties, that it do so by its decree. He alleged that the county officers would, unless restrained, make unlawful transfers of funds and pay much more than was lawfully due the contractor, and that the orders for the thirty bridges amount to more than $23,900, a sum greatly in excess of the funds available, which were only $1,200.

He prayed that the $5,000 warrant be declared a lien upon all the material and bridges purchased and built

under the pretended contract; that Sheeley and the Columbia National Bank be enjoined from attempting to collect the $3,000 warrant; that Sheeley be enjoined from removing any of the bridges or materials, and from asserting any claim to them till further order by the court; that the commissioners and county treasurer be restrained from acting under the contract, and the latter be enjoined from paying the $3,000 warrant, and that it be canceled; that Sheeley be enjoined from claiming that his bid at prices set opposite his specifications included only substructures; that the board be restrained from ordering more bridges on the contract, and Sheeley from interfering in any way with the materials and structures furnished the county under it; that the court should instruct the commissioners as to their duties in adopting plans and specifications, advertising for bids, letting contracts and taking bonds for their performance in the matter of county bridges.

On June 23 there had been filed an answer to this cross-petition by the contractor. He admitted the corporate and official character of the parties and the adoption of plans and specifications for bridges for 1902 by the county board, and the advertisement calling for plans and specifications, but alleged that the advertisement was in all respects lawful; admitted that he made a bid accompanied by plans and specifications of his own, but said it was accompanied also by those "which had been previously adopted by the county," and that the bid was in all respects regular and lawful, and denied any lack of authority in the board to accept a bid with plans and specifications; denied the contract was signed by the commissioners individually and said it was executed by them on behalf of the county. He denied the entire cross-bill and alleged that his bid was regular, was the lowest and best, and was regularly accepted on due consideration; said that the $5,000 warrant was paid to him and the other negotiated to the bank as alleged, but that he had then furnished $9,700 worth of material for bridges, and the warrants were in part payment for it; that nearly all of this ma-

terial, and much more, was placed in bridges for the county before the amended cross-petition was filed; that his bid for wooden bridges was at so much per lineal foot of completed bridges, and for steel ones at a certain price for superstructure, and an additional price for substructure, both by lineal foot, and so understood by the county board, and that all the bids for steel bridges were of the same character. He says that in December, 1901, county commissioner Tilton instructed him to order sufficient bridge material for the year 1902, and assured him that it would be purchased at its reasonable value by the county if he did not get the contract; that the $9,700 of materials were procured and delivered, and the $8,000 allowed in pursuance of such order; that no appeal was taken, and after ten days the warrants were delivered to him; that, as he is informed, the object of such ordering of material was to make roads immediately passable and because of urgent necessity; that, after the awarding of the contract to him, written orders, signed sometimes by two and sometimes by all three commissioners, were from time to time given him for erecting and repairing thirty bridges, the orders being numbered from 1 to 30, inclusive. He says that as to each of these an emergency existed; that all of the work was done under the contract and in accordance with the plans and specifications accompanying it, which had been accepted and were in use by the county; that a record was made of each of said orders and the work done in good faith, and only the $8,000, so far, had been paid for it; that numbers 2, 3, 4, 25, 26, and 27 were completed by March 22, numbers 11, 12, 13, 14, 15, 16, 17, 18, 22, 29, and 30 were completed between March 12 and April —, and numbers 6, 7, 8, 9, 10, 19, 20, 21, and 24 were completed between May 1 and June 15, and the others were in course of construction. He says that seventeen of these bridges were accepted by order of record by the county board, and nine more were accepted by the commissioners, but no order concerning their acceptance as yet entered of record.

He also says that during the progress of this work he was ordered to move and paint certain spans of certain bridges, and did so to the reasonable value, all told, of $863, and that under the terms of the contract there is due and owing $15,986.84 after crediting the $8,000. This amount is itemized by stating the compensation due under the contract for each of the twenty-nine bridges, and for this he asks judgment.

A second amended cross-petition was filed by the county attorney changing its allegations in a few formal respects. An exhibit "B," a resolution of the board of county commissioners which purported to have been adopted April 15 by a "majority vote," was attached. It recited that it had been the custom of the county board, in ordering bridge work under the contract, to go to the site with the contractor and give orders on the spot, and have such orders spread on the records during the year at some time after the work was done and before payment, and that some question had arisen as to the propriety of not entering the orders of record before the completion of the work. It was resolved that the orders for these thirty bridges, designating them by numbers and location, be spread upon the record.

Plaintiff replied, denying that the contract covered any repairs; denied that Sheeley's bid was by the lineal foot; denied that any accounting could be had, and also that anything was due, and also that the contract could be reformed or validated in any way; admitted the allegations in regard to the two warrants, but denied the county's right to any accounting therefor, and denied the need of any relief against a multiplicity of suits, or any other relief for the county in this action, and denied the right of the county to set up its cross-petition for an accounting, and denied the jurisdiction of the court to entertain it. Replies by general denial were filed on behalf of the county to the answers to its cross-petition.

On trial of the issues thus made, the court found generally for plaintiff and against defendants, and that the

contract was illegal and void, and upon the cross-petition, for the county against the contractor, and that he could recover nothing upon his contract.

The court found for the contractor as to the value of the work done before the action was begun, and for the county as to all work done after that. It found the value of bridges repaired and constructed before the action was $6,608.74, and that one more, of the value of $2,065.66, was then in such a condition that it was necessary to complete it, and that on each of two repaired after the beginning of the action the work was less than $100 in amount, so that the board was authorized to have it done without bid or contract, and that these two were worth $128. The total recovery allowed the contractor was $8,802.40, less $8,000 previously paid, leaving $802.40. It found that one bridge was begun after the commencement of the action and not completed, and that nothing could be recovered for it. It found that order number 23 was given before the letting of the contract, that the work on it was $194, but that there could be no recovery for it in this action. It found that construction and repair work to the value of $8,529.06 was done after the action was begun, and that for such work there could be no recovery. It canceled the contract on the county's petition, and enjoined the defendants from carrying it out; awarded judgment to the contractor for $802.40, and enjoined him from in any way interfering with the bridges or materials on the ground. All parties excepted to the findings and decree, and motions for new trial were filed by the contractor as against both the plaintiff and the county, and were both overruled. Motions for new trial filed, separately, by commissioners Borgelt and Welton, were also overruled, and from the decree the contractor appeals.

His counsel take the ground that the sole question presented is, whether he shall be paid under his contract according to its terms, on the ground that it was valid, or shall receive, at least, the additional $8,529.06 for the reasonable value of the work, or shall merely have the

Clark v. County of Lancaster.

$802.40 allowed him by the court. It is claimed that the findings of amounts made by the court are much below the true values as shown by the evidence. It is claimed that as no appeal is taken by plaintiff or by the county they are concluded by the decree. Upon this point we are cited to *Schlawig v. De Peyster*, 83 Ia. 323; *Hamilton v. Whitney, Clark & Co.*, 19 Neb. 303; *Dennis v. Caughlin*, 23 Nev. 188, and *Randolph v. Lampkin*, 90 Ky. 551. The first is a holding under the Iowa practice, which simply makes an appeal a substitute for a proceeding in error. The objection to the decree urged by the successful party had no connection with those of the appellant. This last is also true in the Nebraska case cited. It was an appeal from a finding that a certain judgment was a lien. The appellant disputed the proper indexing of the judgment. The appellee was not allowed to correct the amount which he claimed was too small. The other cases are ones in which appellee's complaint had no direct bearing upon that on which the appeal was taken.

It is not thought that an equity appeal in this state, where the appellant asks a hearing *de novo* as to the validity of the contract in question, and as to the amount due on *quantum meruit* if the contract is found bad, permits him or the court to treat the other party as concluded with reference to these very questions. As the syllabus in *Hamilton v. Whitney, Clark & Co.* puts it, the rights of the plaintiff and of the county are "inextricably involved" with appellant's in the decision of these questions which appellant himself raises. Unless both parties are concluded by a decision on a given point, it seems clear that neither is. Of course there are cases in which only one party is permitted to raise the question, and then if he elects to treat the matter as settled, the other must. But if he chooses to open the question, the other party is no longer bound. A petition in error starts a new action. Nothing is involved in it except the errors assigned. 2 Cyc. 510. An appeal, however, is a further proceeding in the same action and brings up all the parties necessary to

the determination of appellant's rights in the matter. *McHugh v. Smiley,* 17 Neb. 626; *Polk v. Covell,* 43 Neb. 884; *Western Cornice & Mfg. Works v. Leavenworth,* 52 Neb. 418. ·

The plaintiff and the county are here, as appellees, to discuss these very questions brought here for that purpose by the appellant and, it would seem, are entitled to claim whatever the law gives them upon each of these points which the appellant contests. The question of the amount recoverable upon this contract or upon the accounting, if one is to be had between Sheeley and the county, must be deemed entirely open upon this appeal.

The first real question to be determined is the validity of the contract. It is assailed on the ground that the advertisement is illegal, that it called for bids to be accompanied with plans and specifications and yet was "for the building of all bridges that shall be ordered for the ensuing year"; that there were no funds on hand to warrant any such expenditure as the contract involved; that the bid was not by the lineal foot; that Sheeley's bid was not the lowest and best one; that the agreement to pay estimates and for filing a bond within sixty days are both unlawful; and that there was no lawful consideration of competing bids.

Section 83, chapter 78, Compiled Statutes (Annotated Statutes, 6080), provides, that all contracts for the erection and reparation of bridges, whose expense shall be more than $100, shall be let "to the lowest and best bidder." Provided the county commissioners "may adopt plans and specifications for the building of such bridges and may let a contract or contracts for the building of all bridges that may be required to be constructed during the term of one year from the letting of the contract." There are further provisos that the contracts shall not be let to cost more than the money on hand in the bridge fund, together with the road fund money of the district where the work is to be done.

It is urged that the clear meaning of this statute is that,

where it is meant to let annual contracts, plans and specifications must be adopted in advance and the contract be for bridges in accordance with such plans by the lineal foot; that, if such must be the contract, the advertisement must call for the same thing and that it did not in this instance.   It is also claimed that there is no authority whatever for an annual contract for repair work; that in its nature there could not be, and that no mention of repair work occurs in the advertisement.   It is also objected that the contract is utterly indefinite as to the amount of work, and that orders were given under it for some $23,000 worth of bridges, while there were only $1,200 on hand.   It is admitted that there was only this amount of cash, but it is claimed that $4,000 more were really in the bridge fund because it had been transferred to the general fund by an improper and illegal order in December and was returned in March, and that the "levy of the current year" referred to in the statute was the levy of 1902, which was made in July of that year.   Two-thirds of it would be $16,803.07. If this was available before the levy was made, with the other funds at hand, there would be sufficient to warrant the contracting for all the bridges ordered.   If, however, the levy of 1902 was not available until it was made, then the contracts were in excess of the board's authority and forbidden by the statute.   The question as to whether the term "current year" in this statute means calendar year, which has long been by this court held to be the fiscal year of the county (*State v. Cornell*, 54 Neb. 650), or the year from one annual levy to another, is by no means free from difficulty.

In *Austin Mfg. Co. v. Brown County*, 65 Neb. 60, in an opinion with which the writer concurred at the time, it was held that the provision against contracting any debt against the general fund of the county, in excess of "85 per cent. of the amount levied by tax for the current year," did not interfere with contracting in May on the strength of a levy made on June 29.   It was there declared that the levy "for the current year" was the one made in that cal-

endar year; that the levy as well as the collection of a tax might be anticipated.

A more careful consideration of the question, since, has led to the conclusion that the opinion in *Austin Mfg. Co. v. Brown County* goes too far, and much farther than was necessary to a determination of that case. A perusal of the opinion will show that the defense, made some years after the giving of the order for the grading machines, was that it was given in May, when there were no funds on hand. The receipt of the machines and the retaining of them in use after the annual levy would ratify the former contract, if it was susceptible of ratification, or would constitute the basis of a new implied one, if the former was absolutely void. There is no statute prescribing how contracts for such supplies shall be entered into and an implied contract was held valid.

The language used in the statute, as to the general fund, is somewhat stronger than in the one under consideration. The permission as to the general fund is to use "85 per cent. of the tax levied for the current year." It is impossible to see how a tax can be "levied" when it is only estimated and the time for levying it has not arrived. It seems clear that in the case of the general fund it is only a tax levied that may be contracted against.

In the case of the bridge fund, the wording is slightly different. Not "85 per cent. of the tax levied" but "two thirds of the levy of the current year" may be contracted against. This, however, would seem, in absence of any other controlling fact, to alter the construction, to require an existing and not merely an estimated and expected levy. Such a fact is sought in the phrase "money on hand derived from the levy of previous years." It is urged that the levy of 1901 was a levy of the previous year and therefore the two-thirds of the levy of the current year must be that of 1902. It is clear, however, that this is merely assuming that the term "previous year" has reference to the calendar year last elapsed. There seems no more necessity for assuming that previous year means previous cal-

endar year, than that "current year" means current calendar year. It must be conceded that, ordinarily, when we use the term "this year," "the current year" or "the previous year" we mean, in each instance, the calendar year in which the event under discussion took place and the one before it. Did the legislature have this meaning in putting the words into this statute? The argument seems irresistible that it did not. They were fixing the exact limit beyond which the county board should not contract. To put such limit at a wholly uncertain and unknown amount, to be determined by future action of the board, would be to make none. It would leave those who should contract with the county entirely uncertain for nearly six months as to whether their agreement was valid or invalid. To hold that in each use of the word the year referred to, whether "current" or "previous" is the year from one levy to another, the year for which it is really made, seems more reasonable. Granting the contention of defendant, that the transfer of $4,000 from the general to the bridge fund was merely replacing money that belonged in that fund, there was still only about $6,000 available money in that fund. The orders given amount to more than $23,000 unless the levy of 1902, not yet made, could be taken into consideration. We conclude that such action was unauthorized and the taxpayer on this ground entitled to enjoin its execution.

The statute seems to require also that plans and specifications be adopted in advance of the letting of an annual contract and that the contract, as well as the advertisement, should have been based upon such plans. It also seems plain that no authority exists for repairing by annual contract, and that where a repair job amounts to more than $100 it must be done by advertising for bids. The contract therefore was invalid and the action of the county board under it unlawful. Was the payment ordered by the trial court of the reasonable value of the work done before the action was commenced the true measure of Sheeley's rights?

The plaintiff took no appeal from the order admitting the county to interplead and to ask for an accounting. Sheeley's appeal from the amount allowed him can not be said to bring up the question of the county's right to request this accounting in which request he joined. We therefore do not have before us the question of the right of the county authorities to inject these questions into the taxpayer's action for an injunction against the carrying out of this contract and for its annulment. We do not see any necessary connection between the two. The plaintiff sought to enjoin any claim or recovery by Sheeley on account of these bridges, but the joining of the proceedings for a settlement of Sheeley's rights, without a contract, to the action of Clark, which was brought to stop proceedings under it, seems to have been productive of no little confusion at the hearing. The question of the right of such joinder, though raised at the trial, is not before us at the present time and is not decided.

The question remaining is, what amount is Sheeley entitled to recover for these bridges built and repaired with no legal contract? It seems clear that the Nebraska statute indicates a prohibition upon any such method of bridge building. It would certainly make the statutory requirement, that all repair work exceeding $100 in amount shall be done upon competitive bids duly advertised for, of small account, if a county board could simply give orders for such work, as in this case, amounting to more than fifteen thousand dollars, with no advertising and no contract. Sheeley's contract, like the advertisement, is silent as to repairing. The advertisement was for bids upon "the building of all bridges that shall be ordered for the ensuing year," and the contract was "to furnish all materials and to construct and complete ready for travel such bridge work as said commissioners may order built over streams," etc. The work was to be "built" according to plans and specifications accompanying, and of the various lengths and materials as ordered. There is not an intimation that of the $23,900 worth of work contemplated about $15,000 was repairing.

Of course equity enforces no forfeitures, but equity follows the law. If, as we think, there is in the law of the state of Nebraska a distinctly implied prohibition against the making of bridges, without advertising and letting of contracts, and against repairing bridges where the expense is more than $100 without such letting of contracts, and there is in the statute an express prohibition of the doing of either, without money on hand or a levy actually made to pay for it, then, in equity, as at law, there can be no recovery where there has been an intentional violation of the prohibition.

In this case, however, there was an attempt to comply with the law. An advertisement was published, a bid made and a contract entered into. There was a colorable claim, at least, of a right to contract with reference to the levy to be made in the following summer. The trial court did not find that these proceedings were taken in bad faith. It entered no express finding as to that, but in allowing Sheeley the $8,204, which he had earned before the action was begun, it must have found that up to that time the proceedings, while irregular and unauthorized, were in good faith. We are not prepared to say that this finding is wrong and that the circumstances are such as to entitle the county to hold Sheeley's materials, as well as labor, for nothing.

Was the refusal to allow him anything for the nine bridges constructed or repaired after the commencement of this action amounting, as the trial court found, to $8,529.06, right and justified? It is, of course, contended by appellee, Clark, that the general finding in his favor is a finding of fraud and wilful violation of the law which precludes any recovery at all by Sheeley. If this were true the refusal to allow for the bridges constructed and repaired after the bringing of this action must not only be sustained, but the allowance for what was previously done must be reversed.

There are some facts in this record tending quite strongly to show that the advertising and letting of the

contract was not in good faith; that Sheeley practically had an understanding with the commissioners from the preceding year that he was to have the contract; that as his witness, Drake, expressed it, "Lancaster county was Sheeley's territory." The court, however, in allowing him for the first constructed bridges, negatived such a conclusion and we do not care to disturb it. We are unable to see that the bringing of this action changed the conditions. So far as Sheeley's rights and the validity of his contract depended upon his own, and the commissioners, following public statutes, the bringing of this action brought him no fresh notice of them. Their enactment and publication is conclusive of notice to every one. So far as any intent to evade them is concerned, he would know, as well before this action was commenced as afterwards, whether it existed. If, as we think, and the trial court seems to have thought, his right depends upon there being reasonable ground for the construction of the statutes, which his counsel are still contending for, the institution of this action and the failure of plaintiff to comply with the order requiring a bond for the temporary injunction, would be no demonstration of its unreasonableness.

In *Grand Island Gas Co. v. West,* 28 Neb. 852, where a taxpayer had sought to cancel a contract and enjoin its execution, and payment of certain gas bills incurred under it, which the city council had allowed, the decree allowing the injunction was modified so as to permit payment for the gas which had been furnished before the action was commenced. The contract was void because made with a corporation in which members of the city council were stockholders. The case is not authority for the proposition that no recovery could be had for gas furnished after the action was begun. No such question is discussed. So far as appears, none was furnished after the beginning of the action. The holding is that plaintiff was not entitled to an injunction against the payment. Whether it could be recovered for on *quantum meruit* is expressly left undecided. But it is held that a cancellation of the contract

and injunction against its carrying out will be allowed, only, on condition of payment for gas furnished. We are constrained to think, if there had been no temporary injunction and gas had been furnished in good faith up to the hearing, it would have also been required to be paid for.

In the present case the taxpayer chose to litigate his rights in a court of equity. He asked, not only the cancelation of the contract, but an injunction against the allowance of any claim for bridges or for work and material. As preliminary to any such relief it would seem that the court should have required payment for all the labor and material which Sheeley had furnished in good faith before the order was entered, even after the commencement of the action. We think he should have had a decree for the full amount of his labor and materials, or the contract declared void and the parties left to their legal remedies.

It is complained that the amount found by the court is not large enough. There seems to be no equity requiring any greater amount. Mr. Sheeley simply testifies that, at fair prices with a reasonable profit, his work was worth the contract prices amounting to $23,973.35. His witness, Drake, says the work was worth $24,893.64, allowing a twenty per cent. profit on expenditures, and fifteen per cent. to the contractor for office maintenance and expenses, and insurance. Evidently the allowance by the trial court is sufficient to cover Mr. Sheeley's outlay in money and property. For his personal services under a void contract he could make no claim. *Argenti v. City of San Francisco,* 16 Cal. 255. For neither profits nor office and soliciting expenses is the county under obligations to pay one who is violating the law. The evidence as to the steel bridges, No. 1 and No. 19, is that the actual expense of their erection would be, respectively, $1,320.89 and $1,930.78. The first is charged at $2,449.95 and the other at $3,402.76. The finding of the trial court as to completed work which was done after the action, viz., $8,529.06, is thought to be

ample to reimburse the actual expenditure on those bridges.

Bridge No. 5 was not completed and nothing was allowed for it. Mr. Sheeley says the lumber for it was at the side, and worth $195.37, at $25 per thousand feet. That he had put in 184 feet of piling for which he charges 55 cents, making $101.20, and 112 feet of 30 inch tubing, at $12.50, $1,400, making a total for this bridge of $1,696.59. As Mr. Sheeley is enjoined from interfering with any of this material or removing it, he should be paid for it. The main item is the tubing. His witness, Drake, put the price of this at $14, but was allowing a twenty per cent. profit, and fifteen per cent. contractor's expenses. Mr. Sheeley's price is $12.50 per foot, but this price included his profit. Taking Drake's price and deducting the twenty per cent. profit, would make the tubing $1,254.40. The piling at forty cents, the price at which Mr. Sheeley had driven a good deal of piling for Lancaster county, would be $73.60. The lumber at $195.37, Mr. Sheeley's price, would make this bridge worth a total of $1,423.37. This amount should be added, together with the value of the finished work as found by the court, viz., $8,529.06, to the total sum of appellant's recovery.

It is recommended that the amount of appellant Sheeley's recovery from the county be changed from $802.40 to $10,754.83 and that interest be allowed on this amount from the date of the original decree, and that the decree of the trial court in all other things be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the appellant Sheeley's recovery from the county is changed from $802.40 to $10,754.83 and interest on this amount from the date of the original decree, and the decree of the trial court in all other things

AFFIRMED.