THE STATE OF NEBRASKA, EX REL. HENRY E. HITCHCOCK,
v. A. E. HARVEY, COUNTY TREASURER.

Taxes: COUNTY WARRANTS: PAYMENT OF. Sec. 25, Ch. 18,
Comp. Statutes requires the usual levy of taxes for county pur-
poses to be made upon an estimate prepared by the board of
county commissioners. Such estimate may, if necessary, in-
clude outstanding warrants of preceding years; but where it
does not, the fund arising from the levy of that year cannot be
legally used to pay the warrants of preceding years, at least
until all of the expenditures contemplated by the yearly esti-
mate have been met.

THIS was an original application for a mandamus to
compel the respondent, as county treasurer of Furnas
county, to pay a registered warrant of that county for
the year 1879, without preferring the warrants of 1880 to
the warrants of 1879, previously registered, in disbursing
the revenue of the year 1880, collected by him.

*J. R. Webster*, for the relator, contended that warrants
must be paid in the order of registration, without regard
to the year in which the levy is made. Comp. Stat.,
Chap. 93. The act of 1879 [ Comp. Stat., Chap. 18, Sec.
31, et seq.] does not repeal the registration act, which is
still in full force, and should be observed by the relator.

*A. E. Harvey*, pro se.

LAKE, J.

An examination of the several provisions of statute, bearing upon the question here raised, has brought us to the conclusion that the respondent's position is well taken, and that the writ must be withheld.

. The sections of the statute specially applicable, and by which we are brought to this result, are the 25th and 34th of Chap. 18, Comp. Statutes. By the *sixth* subdivision of sec. 25 it is made the duty of the board of county commissioners "at their regular meeting in January of each year, to prepare an estimate of the necessary expenses of the county during the ensuing year, the total of which shall in no instance exceed the amount of taxes authorized by law to be levied during that year, including the amounts necessary to meet outstanding indebtedness as evidenced by bonds, coupons or warrants legally issued; and such estimate containing the items constituting the amounts shall be entered at large upon their records and published four successive weeks before the levy for that year, in some newspaper published and of general circulation in the county, or, if none is published, then in some newspaper of general circulation therein, *and no levy of taxes shall be made for any other purpose or amounts than are specified in such estimate as published,* but any item or amount may be stricken from such estimate or reduced at the time the levy is made," etc.

And the first clause of sec. 34 provides that "it shall not be lawful for any warrant to·be issued for any amount exceeding in the aggregate 75 per cent. of the amount levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same." :

In these provisions we see that the commissioners are required to distinctly specify the very purposes for which. they levy taxes for each current year. And one of the purposes which they are authorized to consider and levy

for is the outstanding indebtedness of the county, evidenced by its warrants legally issued in former years. The warrant in question was issued July 8th, 1879, and against the levy for that year, *but it is not shown that the indebtedness it evidenced entered into the estimate for the levy of 1880, out of which the relator seeks to have it paid.* Nor does it even appear that there was any reason why it should have been a part of that estimate, ample provision already having been made by the levy of 1879, the year in which it was drawn, as shown by the unexpended balance indorsed on the warrant itself.

Now, the law requiring an itemized estimate to be made of the requisite amounts to be raised by taxation for county purposes, is it not a reasonable inference, from this fact alone, that the legislative intent was that the funds realized from the levy should be devoted to those purposes? It certainly could not have been intended that objects thus provided for should be postponed to such as were not included in the yearly estimate.

That the levy for each year is to be regarded as a distinct fund, at least until all of the expenditures contemplated by the yearly estimate have been met, is further shown, we think, by the provision above quoted, which limits the issue of warrants to 75 per cent. of the current levy, unless "there be money in the treasury to the credit of the proper fund for the payment of the same." But the question here arises, what is the "proper fund" to which this provision refers? We answer that it can be no other than the one raised to meet an estimated expenditure covering the particular indebtedness which the warrant represents. If this be not so, what would be the condition of a county financially, after 75 per cent. of the levy had been anticipated by warrants issued in advance of the collection, if the money belonging to that fund should be used as fast as collected in paying the outstanding warrants of preceding years? Is it not appar-

ent that, in such case, there would be no means at hand for defraying the very expenses which the commissioners in their yearly estimate and tax levy pursuant to statute had expressly provided for? And such might be the result to Furnas county if the amount of her outstanding warrants be large, should the rule of payment contended for by the relator prevail.

Another provision of law also tending strongly to show that the money realized from the levy of any one year was intended to be a distinct fund for the payment, first, of the estimated expenses of that year, is sec. 35 of the above-mentioned chapter, which requires that: "Each warrant shall specify the amount levied and appropriated to the fund upon which it is drawn, and the amount already expended of such fund." One of the effects of a compliance with this section is to make each warrant show the condition of the particular fund when it was drawn, provided no payments have been made from it but of warrants of the current year. And this, doubtless, was one of the objects of the provision. But if the treasurer were to pay from it the warrants of other years, drawn against other levies, the fund might, in fact, be actually exhausted, while the last warrant drawn would indicate that a considerable balance of the levy for the current year was still unexpended and available. For these reasons the writ must be denied.

WRIT DENIED.