STATE OF NEBRASKA, EX REL. JOHN A. PEARSON, V. JOHN F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS.

FILED APRIL 21, 1898. No. 9874.

1. County Treasurer's Fees: AMOUNT OF TAXES COLLECTED. Under section 20, chapter 28, Compiled Statutes 1897, in computing the amount of taxes collected by a county treasurer for the purpose of charging percentage, all sums collected for each fiscal year, from whatever funds derived, except school moneys, whether belonging to the state or county, or any of its subdivisions, must be included together, the fees to be allowed but once and charged *pro rata* to the different funds.

2. ———: ———. A county treasurer is not entitled to ten per cent commission on the first $3,000 of state taxes, and a like percentage on the first $3,000 of county moneys, collected by him for each fiscal year, but a fee of ten per cent alone is chargeable on the first $3,000 from whatever source derived, without regard to the year the taxes were levied, except school moneys, and such fees or commissions are to be apportioned *pro rata* among the various funds on account of which the collections were made.

3. Counties: FISCAL YEAR. The fiscal year of a county is the calendar year.

4. ———: ———: TAXES. The words "fiscal year," as employed in said section 20, chapter 28, Compiled Statutes, mean the fiscal year during which the taxes are collected, and not the year in which they were levied or imposed.

5. Statutes: RE-ENACTMENT: JUDICIAL CONSTRUCTION. Where the legislature re-enacts a law of the state, it thereby adopts the judicial construction which had been placed thereon by the highest court of such state.

6. County Treasurer's Commission: LEGISLATIVE APPROPRIATION: STATE WARRANT. The auditor of public accounts is powerless to draw a warrant upon the treasury for commissions due a county treasurer upon moneys collected by him for the state and paid into the treasury, unless a specific appropriation has been made for that purpose by the legislature.

ORIGINAL application for mandamus to compel the auditor of public accounts to draw a warrant on the state treasury for fees claimed by relator, as county treasurer of Phelps county, in collecting revenues belonging to the state. *Writ denied.*

*W. S. Morlan* and *John S. Kirkpatrick,* for relator.

References: *State v. Babcock,* 22 Neb. 33; *State v. Moore,* 36 Neb. 579; *Moose v. State,* 49 Ark. 599; *State v. Roderick,* 23 Neb. 505; *State v. Harvey,* 12 Neb. 31; *State v. Weir,* 33. Neb. 35; *Bedwell v. Custer County,* 51 Neb. 387; *McKeen v. Delancy,* 5 Cranch [U. S.] 22; *Martin v. Hunter,* 1 Wheat. [U. S.] 304; *Cohens v. Virginia,* 6 Wheat. [U. S.] 264; *Myrick v. Hasey,* 27 Me. 9; *Whitcomb v. Rood,* 20 Vt. 49; *Franklin v. Kelley,* 2 Neb. 87; *Stewart v. Daggy,* 13 Neb. 290; *Jackson v. Washington-County,* 34 Neb. 680; *Sampson v. Sampson,* 3 L. R. A. [R. I.] 349; *Bloxham v. Consumers E. L. & S. R. Co.,* 29 L. R. A. [Fla.] 507; *In re Contest Proceedings,* 31 Neb. 262.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General, .contra.*

NORVAL, J.

This is an application to this court, in the exercise of its original jurisdiction, by the state, on relation of John A. Pearson, for a peremptory writ of mandamus to compel the respondent, as auditor of public accounts, to draw his warrant upon the state treasury in favor of relator

for the sum of $808.24, in payment of fees and mileage alleged to have been earned by him as county treasurer of Phelps county, in the collection of the revenues belonging to the state, between January 1, 1897, and January 5, 1898. The application sets forth the total amount of taxes collected by relator during that period on account of each of the several funds, as well as the amount received by him from the levy of taxes from 1885 and during each year subsequent thereto, and avers that respondent has audited and allowed as commissions and mileage for the collection of the state's money the sum of $411.87 and no more. The cause has been submitted upon a general demurrer to the application.

The question involved is one of statutory construction, namely, the manner of computing the commissions authorized to be paid to a county treasurer for the collection of the revenues of the state. Section 20, chapter 28, Compiled Statutes 1897, reads as follows:

"Sec. 20. Each county treasurer shall receive for his services the following fees: On all moneys collected by him for each fiscal year, under three thousand dollars, ten per cent. For all sums over three thousand dollars and under five thousand dollars, four per cent. On all sums over five thousand dollars, two per cent. On all sums collected, percentage shall be allowed but once; and in computing the amount collected, for the purpose of charging percentage, all sums, from whatever fund derived, shall be included together, except the school fund. For going to the seat of government to settle with the state treasurer, and returning therefrom, a traveling fee of ten cents per mile, to be paid out of the state treasury. The treasurer shall be paid in the same *pro rata* from the respective funds collected by him, whether the same be in money, state or county warrants. On school moneys by him collected, he shall receive a commission of but one per cent."

The construction given the foregoing section by counsel for relator is that the commissions of a county treasurer

for the collection of state taxes, other than school moneys, are ascertained by making a computation alone on the amount of the revenues of the state collected by him for each fiscal year, disregarding the county, city, and other taxes which he has collected, and that the sums received on account of the assessment for one year are not to be included with collections made on taxes imposed for any other year. If the basis of calculation just suggested is the correct one, relator is entitled to the amount of fees demanded; otherwise not. It is noticeable that the statute authorizes the treasurer to charge certain percentages on "all money collected by him for each fiscal year." The fiscal year of a state commences on December 1 and ends on November 30 following. (Compiled Statutes, ch. 83, art. 3, sec. 17; ch. 83, art. 4, sec. 9.) The fiscal years of cities of the several classes begin and end at different times. Thus, in cities of the metropolitan class, the fiscal and calendar years are the same. (Compiled Statutes, ch. 12a, sec. 40.) In cities of the first class having over 25,000 inhabitants, the financial year commences on the first Monday in September, while in cities belonging to the second class, having a population of over 5,000 and not exceeding 10,000, the fiscal period begins on the second Monday in August (Compiled Statutes, ch. 14, art. 2, sec. 38), and the first Tuesday in May marks the beginning of the fiscal year in villages, and all cities having less than 5,000 inhabitants (Compiled Statutes, ch. 14, art. 1, sec. 85.) The legislature has not in express terms defined what period of time shall constitute the fiscal or financial year for county purposes, but it is conceded by relator that it is the calendar year. A consideration of the various provisions of the revenue law relating to the levy, collection, and disbursement of the public moneys of the county, the statute requiring the usual levy of taxes for county purposes to be made annually upon estimates prepared by the county board in January of each year, and forbidding such board from contracting any indebtedness for any object not enumerated in such

yearly estimate of expenditures, and the enactment that the compensation of the county treasurer cannot exceed a specified sum per annum, make it reasonably certain that the lawmakers intended that the fiscal period of a county should correspond to the calendar year.

It is strenuously argued that the purpose of the legislature to allow the county treasurer ten per cent on the first $3,000 of state moneys collected is manifest from the fact that the fiscal year for the state and the county does not begin or end at the same time. The conclusion suggested is unsound. It is contrary to the plain import of the statute. The lawgivers never intended the state should pay the treasurer a commission of ten per cent on the first $3,000 collected for the state for the fiscal year commencing on December 1, a like percentage on the same amount of village taxes first received by the treasurer after May 1, and a like commission on the first $3,000 of county revenues collected in any calendar year. Had it been the purpose of the legislature that commissions on the collection of taxes should be so computed, language more appropriate to indicate the intent would doubtless have been chosen in the framing of the section under consideration. The words "fiscal year," as employed therein, do not refer to the various fiscal periods already mentioned, but to the fiscal year as applied to counties alone. This is indicated by the fact that a county treasurer is not a state officer, but a county official. He collects in that capacity the state's revenue, and the section treats alone of his compensation. The legislature must have intended that his fees should be calculated on collections made with reference to a single fixed period. Any other rule would render it exceedingly difficult, if not almost impossible, to adjust his commissions in accordance with the provisions of the statute.

It is specified that the county treasurer shall receive for his services "on all moneys collected by him for each fiscal year, under three thousand dollars, ten per cent." The law reads "all moneys." It means what it says, and

not a portion of all moneys collected. If it had been the
purpose that all the state moneys for each fiscal year
should alone be included together, it would not have
been a difficult matter to have used language to make
such intent clear. On the first $3,000 of the public reve-
nue, other than school moneys, collected by the treasurer
for any calendar year, belonging to the state, county,
village, or any subdivisions of the state, he is entitled
to charge a commission of ten per cent, no more and no
less. That this is the proper exposition is strengthened
by the fact that the section under review in express terms
declares that "in computing the amounts collected for
the purpose of charging percentage, all sums, from what-
ever fund derived, shall be included together, except the
school fund," and further, "the treasurer shall be paid
in the same *pro rata* from the respective funds collected
by him." There is no room for controversy that all mon-
eys collected by a county treasurer for any fiscal year,
belonging to the state, county, and village, other than
school moneys, must be considered together for the pur-
pose of allowing commissions.

In *State v. Roderick*, 25 Neb. 629, section 20 of chapter
28, Compiled Statutes, was before the court, and it was
there determined that in computing the amount collected,
for the purpose of charging percentage, all sums, from
whatever source derived, except school money, should be
added together, the commissions apportioned *pro rata*
among the different funds, and be allowed but once.

Another argument against this construction is that
there is no means by which the auditor could ascertain
and adjust the commissions except upon an examination
of the treasurer's books in regard to the county funds
collected, and that there is no provision of statute which
requires a county treasurer to report to the auditor the
amount of county moneys received by him. Let us see if
this position is tenable. Section 5, article 3, chapter 83,
Compiled Statutes, relating to the settlement of the au-
ditor with county treasurers, requires all such treasurers

to "exhibit their accounts and vouchers to the state auditor." There is as much authority for a county treasurer to render a statement to the auditor of the county moneys collected as there is of the state funds; especially is this true when sections 162 and 163 of the revenue law are considered. (Compiled Statutes, ch. 77, art. 1.) Section 162 declares that "the county clerk shall make out and deliver to the county treasurer, as soon as adjustment is made with the county board or county clerk, annually, the statements, certificates, and lists appertaining to the settlement of the accounts of such treasurer; which statements, certificates, and list shall be made out in proper form, under his seal of office, on blanks which it is hereby made the duty of the auditor to furnish, annually, for that purpose. The treasurer shall deliver the same to the auditor and make a final settlement of his accounts on or before the first day of February in each year." Section 163 makes it the duty of the county clerk to furnish a duplicate copy of said statement, duly certified, whenever requested so to do by the auditor. With these provisions in force the auditor can make settlement with the treasurer, and determine the amount of his commissions on state funds, without a personal examination or inspection of the books in the office of the county treasurer.

It is urged by the relator, and it is so averred in the application for the writ, and by the demurrer admitted to be true, that for many years past the state auditor and state treasurer have universally construed the statute to mean that the revenues of the state and those belonging to the county were to be separately considered in ascertaining the fees to be paid the county treasurer for the collection of the state taxes. It is, doubtless, true that the construction of a statute by the legislative or executive department, when deliberately made, is entitled to great weight in many cases, although not conclusive upon the court; but such an interpretation will not be followed by the judiciary where to do so would be to

ignore the plain and obvious meaning of the law and override the judicial exposition placed thereon.

It has been frequently asserted that in case the legislature adopts the statute of another state, it likewise adopts the construction which it had already received by the highest court of such state; and, by a parity of reasoning, where a law is re-enacted by a legislature, which had been interpreted by the supreme court of the same state, such construction is thereby adopted. Said section 20, chapter 28, Compiled Statutes, in almost the present form, has been part of the statute law of this state for many years, and it was construed by this court at the January term, 1889, in *State v. Roderick*, 25 Neb. 629. The section was re-enacted at the session of the legislature in 1891. (Session Laws 1891, ch. 27.) It must, therefore, be presumed that the construction given the section in that case was adopted by the legislature, and is as much a part of the law as if it had been by apt language incorporated in the body of the statute. The conclusion is, therefore, irresistible that all public moneys collected by a county treasurer for each fiscal year for and on behalf of the state, and each of its subdivisions, except educational funds, must be added together for the purpose of determining the compensation of the officer, and that he is entitled to ten per cent upon the first $3,000 of such aggregate sum, four per cent on the next $2,000, and two per cent on the residue, the commissions to be charged *pro rata* to the various funds, and to be paid only once.

The next propositions for consideration are whether the compensation of a county treasurer should be determined by adding together the various revenues collected by him during a single year without regard to the year the taxes were imposed, or must the several amounts collected in one year, on account of the levies of different years, be separately considered in making the calculation? Counsel for relator place the latter construction upon the statute. and they insist that where the officer

has during a single year received taxes raised by levies made in different years, he is entitled to ten per cent commission on the first $3,000 collected by him on account of each separate year's levy.   In other words, if during 1897 he collected taxes imposed in 1890, 1891, and 1892, respectively, he should receive for his services ten per cent on the first $3,000 collected on the levy of 1890, a like percentage on the first $3,000 paid in on account of the levy of 1891, and the same basis of computation to obtain for the levy of 1892.   Such an exposition of the statute is not permissible.   The words "for each fiscal year," as used by the legislature, can have but one of two meanings, namely, the fiscal year the taxes are imposed, or the financial year during which the collections are made.   If the former is the correct interpretation of the provision of the section, then it is plain that ten per cent can be charged once only on the first $3,000 collected on account of the levy of a single year, whenever received. Thus, if $3,000 is paid on account of the levy of 1895, during that year, upon which ten per cent commissions have been paid the officer, and $3,000 is received by him on account of the same levy during 1896, he is not entitled to ten per cent on this latter sum.   The statute expressly prohibits the payment of percentage more than once.   Giving the word "for" in the phrase "for each fiscal year" its ordinary signification, the writer is of the opinion that the statute has reference to the fiscal year the taxes are imposed, rather than the year in which the same are collected.   The word "for" means "on account of" or "during."   The latter definition was given the word "for" in *Lawson v. Gibson*, 18 Neb. 137, and in effect it was held to have been so used in the section of the statute under review in *State v. Roderick*, 25 Neb. 632. In the latter case the county treasurer collected in 1886 from all sources, exclusive of school moneys, $148,475.94, and the court held that in computing the amount of fees of the officers all sums, from whatever source derived, should be added together.   The whole decision proceeds

upon the theory that "fiscal year," as employed in the section, meant during the year the money is collected, and that no account is to be taken whatever, in determining the officer's compensation, of the different years on account of which the levies were made from which the moneys were derived. The section having been re-enacted after that decision was rendered, as already stated, the exposition then given the statute was thereby adopted by the legislature, and we do not feel at liberty to now ignore such construction, especially since it is not an unreasonable one.

It is suggested that "If the delinquent taxes for the various years are to be treated as one fund, and belonging to the fund of a subsequent year, as the auditor has done in this case, the delinquent taxes for ten years can be merged in one year, and the purpose for which the money is appropriated be entirely defeated." The construction we have placed upon the section does not treat the levies of different years as one fund for the purpose of distribution, or divert them to purposes different from that for which the taxes were levied. The moneys are not commingled, but for the single purpose of determining the compensation of the treasurer those derived from the levies of the various years are computed together. The calculation is based upon the entire revenue paid, except school moneys, from whatever source derived, without regard to the year the levy was made. It follows, from the views already expressed, that the application states no grounds for relief.

The same conclusion is reached by a different and shorter course of reasoning. The application is to require the auditor of public accounts to draw his warrant upon the state treasurer in payment of the fees and mileage claimed to be due the relator on account of the collection of the moneys of the state. The constitution forbids the drawing of a single dollar from the state treasury except when authorized so to do by a specific appropriation. (Constitution, art. 3, sec. 22; *State v. Wallichs,* 12

Neb. 407, 15 Neb. 457, 609, 16 Neb. 679; *State v. Moore,* 50 Neb. 88; *State v. Babcock,* 18 Neb. 221.) In the last case it was decided that the auditor had no power to draw a warrant upon the state treasury for commissions due the county treasurers on account of moneys collected by them for the state. The application for the writ in the case in hand contains no averment that any appropriation has been made by the legislature which is available to pay the fees for collecting moneys belonging to the state. Therefore, in any aspect of the case, the demurrer to the application should be sustained, and the

WRIT DENIED.