STATE, EX REL. JOHN W. McDONALD, APPELLANT, V. J. C. FARRINGTON ET AL., APPELLEES.

FILED FEBRUARY 6, 1908. No. 15,298.

1. County Board: ALLOWANCE OF CLAIMS. The allowance by the board of county commissioners of a claim against the county, there being no money in the treasury at the time, and no tax levy against which a warrant can be drawn, while it may be irregular, is not in excess of the power given the board to examine and settle all claims against the county.

2. ———: ———: LIMITATIONS. The duty of the board of county commissioners to provide for the payment of all allowed claims, where such allowance is not absolutely void, is a continuing duty against which the statute of limitations is no defense.

APPEAL from the district court for Dawes county: JAMES J. HARRINGTON, JUDGE.  *Reversed with directions.*

S. L. *Geisthardt* and *Roscoe Pound,* for appellant.

*Albert W. Crites* and *J. E. Porter, contra.*

DUFFIE, C.

The plaintiff asks a writ of mandamus commanding the defendants, three of whom are the county commissioners of Dawes county, and the fourth, the clerk of said county, to revise their estimates and levy for the year 1904, and to include in their estimates and levy of taxes an amount sufficient to pay the claims of the relator against the county, together with interest thereon, not exceeding in the aggregate the amount limited by law for such estimates and levy.  A demurrer was interposed to this petition and submitted to the district court for Dawes county on April 24, 1905, and was by the court held under advisement until January 10, 1907, when the decision of the judge presiding at the hearing was, at his request, announced by the Honorable W. H. Westover, also a judge of that court, and judgment was entered dismissing the petition.  Plaintiff has appealed.

It is shown in the petition, and admitted by the demurrer, that during the years 1892 and 1893 the county of Dawes became indebted to various persons on account of salaries and office expenses of county officers, witness fees, court costs in county and state cases, supplies furnished to the county, taking care of paupers, repairing county property, and the like.  There is no claim that this indebtedness was not honestly incurred for actual services rendered, and supplies furnished; indeed, it is freely admitted by the county that the claims were all legally incurred, and constitute a moral obligation against the county.  At various sessions of the board of county commissioners during the years 1892 and 1893 all the claims referred to in the petition were presented to the county board, examined

and allowed, and warrants were issued and delivered to the holders of these claims. The warrants were in the ordinary form, showing on their face the purported amount of the levy for the fund on which drawn, and the amount already drawn on such fund, which in each instance was less than 85 per cent. of the amount of the funds as shown on the face of the warrant. These warrants were subsequently sold, and after passing through one or more hands became the property of the National Life Insurance Company, of Montpelier, Vermont, and this company continued to hold them until some time during the year 1903, when it transferred them to the relator, who had become liable for their payment under a guarantee made to the insurance company at the time it purchased them. The warrants were all registered for nonpayment, and have never been paid. The county board of Dawes county has made several ineffectual efforts to provide for their payment. At a regular session of the board for making estimates for the year 1896 an estimate in the sum of $4,500 was made to pay outstanding warrants, including those in question, and a tax was levied for their payment. The county board further transferred to the general fund money in the hands of the treasurer to the credit of the bridge and other funds, in which there was a surplus, for the purpose of retiring these warrants. The tax levy made in 1896 was enjoined by the Grand Island & Wyoming Central Railroad Company. On appeal taken to this court from the judgment of the district court enjoining such levy, the judgment of the district court was affirmed. *Grand Island & W. C. R. Co. v. Dawes County*, 62 Neb. 44. After this the National Life Insurance Company, in the year 1899, brought suit against the county on these and other warrants, and in that action the district court adjudged that the warrants here in controversy were void, because prior warrants had been issued against the funds on which drawn in excess of 85 per cent. of the levy. This judgment was affirmed by this court January 7, 1903. *National Life Ins. Co. v. Dawes County*, 67 Neb. 40. After the decision in the case

last mentioned, and before the meeting of the board for making the annual estimates for the expenses for the year 1904, the relator made a demand upon the board that it include in the estimate for expenses for that year an amount sufficient to pay the claims represented by these illegal warrants, and to make a levy to raise a fund to pay such claims. A further demand was made upon the board prior to the annual levy for 1904 to raise a fund on which valid warrants might be drawn to pay these claims. The board refused to comply with either of these demands. The petition further recites that on January 30, 1904, there was cash in the general fund of Dawes county in the sum of $1,170.85, and that at all times since there has been in the general fund an amount sufficient to pay a portion of the relator's claims; that the assessed valuation of all the property in the county was sufficient to enable the county board to make a levy to pay all the expenses of the county, and in addition an amount sufficient to pay the claims of the relator.

In support of the judgment of the district court the defendant makes two contentions: First, that there has never been any valid allowance of the claims held by the relator, because when said claims were allowed there were no unexpended funds against which warrants might be drawn; and, second, that the relator's cause of action is barred by the statutes of limitations. If the allowance of these claims made by the county board in 1892 and 1893 was valid, then they stand as a liability against the county in the nature of a judgment. It was held in *Taylor v. Davey*, 55 Neb. 153: "An order of a county board allowing or rejecting claims against the county has the force and effect of a judgment, and is conclusive unless vacated or reversed on appeal." This being so, the duty of the county to provide for the payment of a judgment is a continuing duty against which the statute of limitations could not operate. The material question then is: Did the county board of Dawes county have jurisdiction to audit and allow these claims at the time they were audited and allowed;

there being no money in the fund out of which the claims were to be paid against which a warrant might be drawn? In *Lancaster County v. State*, 13 Neb. 523, this court refused to issue a mandamus directing the commissioners of Lancaster county to audit a claim where no estimate had been made for taxes to be levied to pay the same, and where there were no funds in the treasury for its immediate payment. The court, after examining the several sections of our statute relating to the allowance of claims against the county, said: "A fair construction of these provisions shows that the legislature did not intend that a claim should be allowed until a warrant could be drawn for the payment of the same; in other words, unless there are funds in the treasury or a tax levied upon which a warrant can be drawn. As it clearly appears that there are no funds in the treasury, or taxes levied upon which a warrant can be drawn to pay the relator's claim, the commissioners will not be compelled to audit his account." In the later case of *State v. Cather*, 22 Neb. 792, the relator applied for a writ of mandamus to require the respondents to include in their estimate for taxes and to levy a tax to pay a claim which he held against the county, and which had been allowed by the county commissioners a long time prior thereto. One of the defenses made by the answer was that the pretended allowance was not in law an allowance or judgment, as there were at the time no funds of Webster county against which warrants might or could be drawn in payment thereof, and no money in the county treasury out of which the allowed claims might be paid. It was held that this did not constitute a defense. How are these two seemingly conflicting opinions to be reconciled? It can be done only upon the theory that the allowance of a claim at a time when a tax has not been levied for its payment, and when there is no money in the treasury against which a warrant might be drawn, is not a void action on the part of the county commissioners, but is merely an irregularity or erroneous proceeding had by them. That this is the true rule to apply clearly appears,

we think, from an examination of the statutes, and from later expressions by the court. Section 23, art. I, ch. 18, Comp. St. 1897, defines the powers of the county board. Among other powers conferred by this section are the following: "To manage the county funds and county business, except as otherwise specifically provided,  *   *   * to examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county." Section 33 of said chapter provides that, "upon the allowance of any claim or account against the county, the county board shall direct the county clerk to draw a warrant upon the county treasurer in payment thereof," etc. In the case of *Perkins County v. Keith County*, 58 Neb. 323, this court had occasion to examine and construe section 23 in connection with section 37 of chapter 18, and said: "It is entirely clear that section 37 is not a grant of power to the county board, but rather a provision regulating the exercise of the power granted in section 23." In *State v. County Commissioners of Cass County*, 60 Neb. 566, it was claimed that the board had no jurisdiction to audit and allow an unverified account. In the twelfth paragraph of the syllabus it is said: "Section 37 regulates the grant of power and mode of procedure in the allowance of claims against the county, and the failure to observe its provisions does not deprive the commissioners of a county of jurisdiction to act upon claims against the county." In this case the provisions of section 33, directing that a warrant may issue upon an allowed claim without any mandatory direction that it shall issue immediately, cannot, we think, be held either to take away or limit the jurisdiction conferred upon the board of county commissioners by section 23 "to examine and settle all claims against the county," and must be regarded as a provision regulating their proceedings in the exercise of the power conferred. The board of commissioners having charge of county affairs at the time when services are rendered, or supplies furnished, are best qualified to pass upon the legality of the claim and the amount due thereon.

In making the estimate of the necessary expenses of the county, we are at a loss to understand how they can proceed with any degree of certainty until it is known for what claims they will have to provide, as the amount of such claims cannot be known until they have been examined and passed on by the county board. The allowance of the claims now held by the relator may have been irregular, but the action of the county board in that respect was not void. The allowed claims stand in the character of a judgment against the county, imposing on it a continuing duty to make payment.

We recommend a reversal of the judgment of the district court and remanding the cause, with directions to that court to issue the writ as prayed.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded to the district court, with directions to issue the writ as prayed.

REVERSED.