CENTRAL BRIDGE & CONSTRUCTION COMPANY, APPELLEE, V. SAUNDERS COUNTY, APPELLEE: JOHN O. SCHMIDT, APPELLANT.

FILED JULY 7, 1921. No. 21779.

1. Counties: BRIDGES: CONSTRUCTION IN ANTICIPATION OF LEVY. Where the county commissioners included in their yearly estimate of expenses for the ensuing year the sum of $80,000 for bridge fund, they were authorized to order, under a yearly contract previously let for that purpose, the construction of bridges in anticipation of the levy which might lawfully be made for such fund, the cost of which was within the estimate and not in excess of such levy. *Austin Mfg. Co. v. Brown County*, 65 Neb. 60, approved.

2. ———: ———: ———. Such orders are not rendered invalid by the fact that the bridge fund for previous years was exhausted, and that unpaid warrants were outstanding to an amount in excess of the authorized levy for the year in which such orders were issued; nor by the fact that such warrants were paid out of and exhausted the fund produced by the levy just mentioned.

3. ———: WARRANTS: PAYMENT. Warrants issued in payment for work contracted for in a certain year may not be lawfully paid with funds provided for expenses of a subsequent year, unless included in the estimates for such subsequent year, or unless there be a surplus in the proper fund after all claims against it arising during such year have been paid.

4. ———: CULVERTS: PAYMENT. The cost of building culverts under section 2956, Rev. St. 1913, is chargeable to the "county bridge fund" authorized by section 6456.

5. ———: INTEREST. Counties are mere political subdivisions of the state, and are not chargeable with interest on claims against

them, except where lawfully contracted for, or imposed by statute. Counties and municipal corporations proper distinguished.

APPEAL from the district court for Saunders county: EDWARD E. GOOD, JUDGE. *Affirmed as modified.*

*Good & Good,* for appellant.

*Slama & Donato, B. E. Hendricks* and *J. H. Barry,* contra.

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ., ALLEN and REDICK, District Judges.

REDICK, District Judge.

This is a taxpayer's appeal from the allowance by the county commissioners of Saunders county, August 22, 1919, of certain claims of the plaintiff for the construction and repair of bridges and culverts for the said county during the year 1918, in the sum of $51,791.03, composed of the following items: $23,331.82 for culvert work, $25,499.06 for bridge construction and repair, and $2,960.75 interest thereon; John O. Schmidt, taxpayer, appealed from said allowance to the district court, where the same was confirmed, and now brings the matter here for review.

The facts are not disputed and are briefly as follows: In response to demands by the county, the plaintiff made bids for the construction and repair of bridges and culverts during the year beginning December 21, 1917, which were accepted, and on December 28, 1917, separate contracts were entered into covering said work which was to be accomplished upon written orders by the commissioners; such orders were issued and the work performed in accordance with the contract, and the principal amount allowed therefor is correct, and the fair and reasonable value of the work and labor performed and materials furnished.

It further appears that the bridge levy for the year 1917 in Saunders county was $48,498.22 and the emergency

bridge levy $11,624.56, and the bridge levy for the year 1918 was $51,500.51 and the emergency bridge levy $12,875.13, and for 1919 a total levy for both funds of $64,171.25; the total valuation upon which the levy was made was $12,290,289. In January, 1918, and again in January, 1919, annual estimates were duly made and published of the necessary expenses of the county during the years, respectively, for the bridge fund $80,000 and for the emergency fund $20,000.

The following extracts are taken from a stipulation in the record:

"That on the 22d day of August, 1919, and prior to the allowance of the claims involved in this action, there were outstanding and unpaid warrants against the general bridge fund of Saunders county, and claims allowed against said general bridge fund upon which warrants had not yet been issued, in an amount in the aggregate exceeding the amount of money on hand in said bridge fund plus 85 per cent. of the levy on that day made for said fund.

"That on the said 22d day of August, and prior to the allowance of the claims involved in this action, the county board of Saunders county, Nebraska, allowed claims on the county bridge fund in the aggregate amount of $29,360.18, and ordered the county clerk to issue warrants on the said fund for the payment of the same.

"That on August 22d, 1919, there were outstanding unpaid warrants drawn upon the general bridge fund of Saunders county, Nebraska, $30,253.04, and that there was a balance of $322.39 in cash in said fund.

"That the amount of levy for the year 1919 for the county bridge fund was four mills on the dollar valuation, and for the emergency bridge fund one mill on the dollar valuation.

"That on the 22d day of August, 1919, the total amount of cash in the general bridge fund was $322.39, and that the amount of cash in the emergency bridge fund on said day was the sum of $11,626.36, making a total in said

fund in the sum of $11,948.75."

At the time of the levy, August 22d, 1919, a special levy of five mills was made under the supposed authority of chapter 26, Laws 1919, and warrants to cover the claims in suit drawn upon the funds so attempted to be created; but this court held in the case of *Beadle v. Sanders,* 104 Neb. 427, that such levy was invalid.

The first question presented for decision involves the construction of section 2971, Rev. St. 1913, reading as follows:

"Bridges shall not be built, the aggregate cost of which shall exceed a sum greater than the amount of money on hand in the bridge fund derived from the levy of previous years, plus 85 per cent. of the levy of the current year, together with the amount of money in the district road fund in the district where such work is to be performed."

By section 6456 the levy for the county bridge fund is fixed at four mills on the dollar valuation, and the county is elsewhere (section 3001) authorized to levy not to exceed one mill as an emergency bridge fund, and the amounts realized from such levies have been stated above.

Appellant contends that the county has no power to contract for bridges unless there is at the date of the contract sufficient money actually in the funds to pay for the same. It is not contended that the contracts of December 28 are invalid, but the claim is that, before any orders for the construction of bridges or culverts could be issued by the board under said contracts, there must be money in the funds to cover them, and that, inasmuch as the bridge fund for 1917 had been exhausted and the levy for 1918 not made, the orders given to appellee for the construction of bridges and culverts were illegal; the result of such construction of the statute being that from the date of the contract to the date of the levy for 1918 the commissioners had no power to order the construction of any such improvements.

We do not think the construction contended for is reasonable; it disregards entirely the words "plus 85 per cent. of the levy of the current year," which would be mere surplusage if the power to contract were measured only by the amount of money actually in the funds, and might just as well have been omitted. But effect must be given to every provision of the statute, and it seems to us that the language quoted was inserted for the purpose of stating a rule by which the extent of the power to contract was to be measured; the word "plus" indicates something added to that which has gone before, and in this connection undoubtedly grants a power to contract to an extent in addition to the actual money in the different funds referred to, measured by the current levy. Supposing the section read, "Bridges shall not be built, the aggregate cost of which shall exceed a sum greater than 85 per cent. of the levy of the current year," I think it would hardly be contended that the language would suggest that the money must be actually in the fund; in other words, we think the words "plus 85 per cent. of the levy of the current year" merely furnishes a measure; and if it had read "plus a sum equal to 85 per cent. of the levy" the meaning would be perfectly clear.

What, then, was the power of the county commissioners with reference to the construction and repair of bridges and culverts under the contracts in question? In January, 1918, an annual estimate was made, as required by law, of the expenses of the county for the *ensuing year,* including $80,000 for bridge fund and $20,000 for emergency bridge fund, which estimate formed the basis for the levy of taxes for that year. It would seem, therefore, that the commissioners were authorized to order bridge and culvert construction up to an amount within the estimate and not in excess of the amount authorized by the statute to be levied; in other words, the levy for that year, when made, having produced for bridge fund only $51,500.51, any orders in excess of that amount would be invalid.

It was held in *Austin Mfg. Co. v. Brown County*, 65 Neb. 60, opinion by Kirkpatrick, C., that it was not "unlawful for a county board, after estimate made and prior to its meeting as a board of equalization, to anticipate the levy for the current year, and contract an indebtedness upon a particular fund within the estimate, although there is at the time no money in the treasury to the credit of such fund for the payment of the indebtedness, if in contracting such indebtedness the board remain within the limits prescribed by the Constitution and statutes." This case was cited with approval by Epperson, C., in *Roberts v. Thompson*, 82 Neb. 458. The decision in *Austin Mfg. Co. v. Brown County*, however, was criticised by Hastings, C. (who had concurred in it), in the case of *Clark v. Lancaster County*, 69 Neb. 717, in a discussion as to what was meant by the words "current year," in which he concluded that they meant the year from levy to levy, rather than the calendar year, and held that the section in question "gives no authority to the board to take into account the levy of the current calendar year prior to the making of such levy" in the making of contracts for bridge building. But this holding is subject to the same criticism which the learned commissioner makes of the *Brown County* case, to wit, that the opinion went further than was necessary for the determination of that case. In the *Clark* case the court held that, where the county commissioners had entered into a yearly contract for the construction of bridges, they were without power to cancel that contract with the consent of the contractor and let a new one covering a portion of the improvements included in the first contract; but, the contractor having rendered services and materials in good faith, was permitted to recover the reasonable value thereof. We think, however, the current year refers to the period of time during which the contracts are to be performed and the indebtedness incurred, and that the uncertainty as to the precise limits of the power of the county commissioners growing out

of the fact that the levy for that year is not made until August is not greater than generally exists in human affairs; the total valuation for the county for the year previous and the number of mills which may be levied for the purpose furnish a reasonably certain basis from which to calculate the limit to which contracts may extend.

Section 6420 requires the assessment for taxation on April 1; section 6437 provides for the county board of equalization to sit in June; and section 6456 requires that the sitting be continued until the state board of equalization has acted, whose sessions begin the third Monday of July (section 6447), after which "the county board shall levy the necessary taxes for the *current year*" (section 6456). It was said in *State v. Cornell*, 54 Neb. 647: "A consideration of the various provisions of the revenue law relating to the levy, collection, and disbursement of the public moneys of the county, the statute requiring the usual levy of taxes for county purposes to be made annually upon estimates prepared by the county board in January of each year, and forbidding such board from contracting any indebtedness for any object not enumerated in such yearly estimate of expenditures, * * * make it reasonably certain that the lawmakers intended that the fiscal period of a county should correspond to the calendar year." It follows that "current year" as used in the revenue statute means the fiscal year, and that the same words in section 2971, and "ensuing year" in section 954, all refer to the fiscal or calendar year; and the second syllabus in *Clark v. Lancaster County, supra,* is disapproved.

A county may make a valid contract to be paid out of available funds in the treasury, or with the proceeds of taxes that have been or may lawfully be levied during the year the contract is made. *Manly Building Co. v. Newton,* 114 Ga. 245; *Board of Commissioners v. Sauer,* 8 Okla. 409.

If the contracts were valid when made and orders for construction given thereunder not in excess of the levy

for 1918, then the fact that the bridge fund for 1918 was exhausted through the payment of warrants issued for work done in 1917 or previous years would be immaterial. It is unquestionably the theory of our revenue laws that each calendar year, which is the county fiscal year (*State v. Cornell*, 54 Neb. 647), shall take care of itself, and the expenses provided for by the yearly estimate shall be paid out of the funds raised by the levy for that year; in fact, it has been the law of this state since the decision of the *State v. Harvey*, 12 Neb. 31, that the fund arising from the levy of one year cannot be legally used to pay the warrants of preceding years, at least until all of the expenditures contemplated by the yearly estimate have been met. See, also, *State v. Clark*, 79 Neb. 263, holding: "A county warrant issued against the general fund of a certain year is not payable out of the general fund of a subsequent year, unless included in the estimate of the latter year, or unless, after deducting the items included in such estimate, sufficient remains to pay such warrant." The contractor in this case had a right to expect payment from the levy for the year 1918, and, it not appearing that the claims for bridge construction in 1917 and previous years were included in the estimate for 1918, the payment of warrants covering such claims out of 1918 bridge fund was illegal and the rights of plaintiff cannot be affected thereby. *Pope County v. Sloan*, 92 Ill. 177.

There is no warrant for the proposition that the allowance of these claims by the county commissioners was irregular and erroneous; the case of *State v. Farrington*, 80 Neb. 628, does not so hold, but merely, if erroneous, that would not prevent the issuance of a writ to compel levy of a tax to pay the claims. The better reasoning would require the holding that under section 952, subd. 5, Rev. St. 1913, the board may audit and settle claims as soon as the work is completed, though no warrant may issue until after levy; however, an erroneous judgment does not require a reversal unless prejudice is shown.

In 1919 section 2971, *supra,* was amended by adding the following: "Provided, however, if any county has before January first, 1919, entered into any contract for bridge construction or repair in excess of the amount herein permitted to be expended, and the county has received the benefits accruing by virtue of said contracts and the work has been done in accordance with such contract, prior to January 1, 1919, said contracts are hereby validated and made the obligations of the county, and the county board may levy a special tax not to exceed five mills in any one year until sufficient moneys are raised to pay said indebtedness. No estimate shall be required preceding this levy, and the taxes so arising from said levy shall be placed in a special fund to be used for the sole purpose of paying said indebtedness and shall be applied thereto as collected." Laws 1919, ch. 26.

It would seem, therefore, that, regardless of the question of the validity of the orders for bridge and culvert construction, the legislature has declared the bridge orders, at least, valid claims against the county. But appellant contends that the validating act does not cover claims for culvert construction; the language being, "contract for bridge construction or repair." This brings us to the second question presented, the determination of which involves the construction of the validating act in connection, of course, with the other provisions of the statute of which, as an amendment, it forms a part. In view of our holding that the commissioners were authorized to anticipate the levy for the year 1918 in issuing the orders in question, and that such orders were valid, it will not be necessary to decide this question. In the opinion of the writer, however, the validating act is broad enough to cover both bridge and culvert construction for the reasons: (1) A culvert is easily within Webster's definition of a bridge: "A structure erected over a depression or an obstacle, as over a river, chasm, roadway, railroad, etc., carrying a roadway for passengers, vehicles," etc. Of course, a culvert, strictly speak-

ing, is a conduit for passage of water, or a way, but with respect to its use in a highway may be, and generally is, a structure carrying a roadway—it bridges a chasm in the road. If the structure over a ditch consists of longi-tudinal stringers with planks across, it is a bridge. Is it any less a bridge, in a general sense, if it consisted of a box of four sides laid transversely to the road? The primary object in each case is to carry the road over the ditch. (2) The other sections of the statute of which it forms a part deal with both kinds of improvements, both of which are to be paid for from the same fund, and the statute does not pretend to determine how much of such fund shall be devoted to the construction of bridges and how much to culverts, and the amount limited for bridges alone is therefore not determinable; (3) and while the validating act uses the term "bridges" only, it is dealing with the total fund, and the evident intent of the legis-lature was to validate all contracts which might lawfully be paid out of such fund but for the fact that they were excessive. Appellant cites a number of cases involving construction of statutes, to the effect that a culvert is not a bridge, but they were all cases involving the liability of municipal corporations for damages by reason of defec-tive bridges, calling for a strict construction of the stat-utes declaring liability; the statute in question is re-medial and should receive a liberal construction.

The last contention of appellant is that the county is not liable for interest, and in this we think he is right. There is no question but that as a general rule counties are not liable for interest on claims against them. 15 C. J. 662, sec. 375; 1 Dillon, Municipal Corporations (5th ed.) sec. 35 (23); *Seton v. Hoyt,* 34 Or. 266. And this on the ground that a county is essentially an arm or agency of the state, and only liable for interest when so pro-vided by statute, or by a contract therefor lawfully en-tered into. Section 5638, Rev. St. 1913 is as follows: "All warrants issued by the county board shall, upon being presented for payment, if there is not sufficient

funds in the treasury to pay the same, be indorsed by the treasurer, 'not paid for want of funds,' and the treasurer shall also indorse thereon the date of such presentation and sign his name thereto. Warrants so indorsed shall draw interest from the date of such indorsement, at the rate of seven per cent. *per annum* until paid. No account or claim whatsoever against a county, which has been allowed by the board, shall draw interest until a warrant shall have been drawn in payment thereof and indorsed as herein provided." Whether or not this is an inhibition against interest before the allowance of the claim might be a nice question, but it certainly grants no affirmative or inferential authority to make such allowance. Appellee refers to *State v. Farrington,* 86 Neb. 653; but the question was disposed of on the doctrine of the law of the case as announced on the former appeal (*State v. Farrington,* 80 Neb. 628), and there interest was allowed *sub silentio.* The question was not argued nor presented in the briefs, and no mention of it is contained in the syllabus; furthermore, it was an application for mandamus to compel the county commissioners to levy a tax to pay a claim which had been allowed, including interest, and from which no appeal had been taken. *Heald v. Polk County,* 46 Neb. 28. Under these conditions neither case can be considered as authority upon the question. *Grand Island Gas Co. v. West,* 28 Neb. 852, and *Murphy v. Omaha,* 33 Neb. 402, are cited, but these cases are distinguishable from the fact that cities are municipal corporations, while a county is not. The distinction is well pointed out in *Woods v. Colfax County,* 10 Neb. 552, where it was sought to hold the county liable for the negligence of its agents. See, also, *Davie v. Douglas County,* 98 Neb. 479. An interesting discussion of the question at issue will be found in *Reichert v. Milwaukee County,* 159 Wis. 25. It is an undoubted hardship upon appellee to deny a recovery of interest, but we are unable to find any authority for its allowance in the statute or the law.

While we hold the orders upon which these claims arose were valid, the latter, together with similar claims for previous years, make up an excess of the amount permitted to be expended and come within the purview of the validating act; and therefore the county commissioners would be authorized to provide for their payment either under said act, in which case no estimate is necessary, or under their general powers to levy a tax for debts of previous years, in which case they should be included in the yearly estimate; the levy, of course, must not exceed the constitutional limit, nor unduly restrict other funds for carrying on governmental functions.

Judgment modified so as to allow plaintiff $48,830.88 and interest thereon from July 15, 1920.

AFFIRMED AS MODIFIED.