Honorable Fred DeField Representative, District 160 Room 401, State Capitol Building Jefferson City, Missouri 65101
Dear Representative DeField:
This is in response to your request for an opinion from this office asking whether it is proper in construing Section 242.350, RSMo 1969, to substitute the word "culvert" for the word "bridge," and the word "culverts" for the word "bridges."
As we understand, the drainage district in question was incorporated by action of the Circuit Court of Mississippi County, Missouri, on February 12, 1976, but the final plan of reclamation has not been adopted by the board of supervisors; and you inquire whether it is proper in the design of a plan of reclamation for the circuit court drainage district or an engineer to utilize culverts rather than bridges where the drains of the district intersect public roads.
Drainage districts are created by statute, and the powers and authority of drainage districts in this state organized in circuit court are governed by Chapter 242, RSMo. Section 242.220
provides that within sixty days after organizing the board of supervisors shall appoint a competent civil engineer who shall make all necessary surveys and make a report in writing to the board of supervisors containing a plan for draining, leveling, and reclaiming the lands and property described in the articles of the association or adjacent thereto and maps and profiles which indicate physical characteristics of the land and location of public roads, bridges, other rights-of-way, roadways, and other property or improvements located on such lands.
Section 242.230 provides that the chief engineer shall make a report in writing to the board of supervisors concerning the surveys and plans for reclaiming the land and other property contained in the district organized by the court which plan after adoption shall be known and designated as "the plan for reclamation." Other statutory provisions provide that the plan of reclamation shall be filed with the circuit court and for commissioners to be appointed to assess the benefit and damages which may result under the plan of reclamation and, if the costs of the works and improvements as provided for in the plan of reclamation exceed the benefits, the court is to declare the corporation dissolved or, if the estimated costs of constructing the improvements contemplated in the plan of reclamation is less than the benefits assessed against the land and other property in the district, the court shall approve and confirm the commissioners' report. Other statutes provide for the amendment of the plan of reclamation which also has to be approved by the circuit court before it becomes effective.
In order to determine what is to be included in the plan of reclamation, we must look to the statutes to determine the powers and authorities and duties given.
Section 242.350 provides as follows:
 "1. All bridges contemplated by sections 242.010
to 242.690 and all enlargements of bridges already in existence shall be built and enlarged according to and in compliance with the plans, specifications and orders made or approved by the chief engineer of the district.
 "2. If any such bridge shall belong to any corporation, or be needed over a public highway or right-of-way of any corporation, the secretary of said board of supervisors shall give such corporation notice by delivering to its agent or officer, in any county wherein said district is situate, the order of the board of supervisors of said district declaring the necessity for the construction or enlargement of said bridge. A failure to construct or enlarge such bridge within the time specified in such order shall be taken as a refusal to do said work by said corporation, and thereupon the said board of supervisors shall proceed to let the work of constructing or enlarging the same at the expense of the corporation for the cost thereof, which costs shall be collected by said board of supervisors from said corporation, by suit therefor, if necessary. But before said board of supervisors shall let such work, it shall give some agent or officer of said corporation, now authorized by the laws of this state to accept service of summons for said corporation, at least twenty days' actual notice of the time and place of letting such work.
 "3. Any owner of land within or without the district may, at his own expense, and in compliance with the terms and provisions of sections 242.010 to 242.690, construct a bridge across any drain, ditch, canal or excavation in or out of said district.
 "4. All drainage districts shall have full authority to construct and maintain any ditch or lateral provided in its plan for reclamation, across any of the public highways of this state, without proceedings for the condemnation of the same, or being liable for damages therefor. Within ten days after a dredge boat or any other excavating machine shall have completed a ditch across any public highway, a bridge adjudged sufficient by the county court of said county or counties shall be constructed over such drainage ditch where the same crosses such highway, and after such bridge has been constructed it shall become a part of the road over which it is constructed and shall be maintained by the authority authorized by law to maintain the road of which it becomes a part.
 "5. When any drainage district has heretofore constructed or shall hereafter construct a bridge over a drainage ditch where the same crosses any public highway, said drainage district shall not be under obligation thereafter to further maintain or reconstruct any such bridge or bridges for more than twenty years after it first constructed or constructs such bridge at said place. If said bridge has been constructed by the drainage district and has become a part of said road and is then destroyed the authorities having control of the road are authorized, if they desire, to reconstruct such bridge, provided, however, the word corporation as used in this section shall not apply to the state or any political or civil subdivision thereof." (Emphasis supplied)
You inquire whether the term "bridge," as used in Chapter 242, RSMo, would include culverts.
Although there have been many public court cases in this state involving drainage districts, we have been unable to find any case involving the question we are now considering.
Section 242.699 provides as follows:
 "The provisions herein contained are declared to be remedial in character, shall be liberally construed by the courts promptly and shall apply to districts already organized, in process of reorganization or to be hereafter organized or reorganized by circuit courts of this state."
In Graves v. Little Tarkio Drainage Dist. No. 1, 134 S.W.2d 70
(Mo. 1939), the court stated that all the terms and provisions of the drainage act should be construed broadly and liberally to effectuate the wholesome and beneficial motives which prompted its enactment; that the statutes are remedial in character and purpose and shall be liberally construed by the courts in carrying out this legislative intent and purpose.
In Central Bridge Construction Co. v. Saunders County,
184 N.W. 220 (Nebr. 1921), the issue before the court concerned the use of public funds appropriated for building bridges or building culverts in a suit brought by a taxpayer to prohibit the county commissioners from using the funds in payment to the contractor for building culverts. In discussing this question, the court stated, l.c. 223:
 "It would seem, therefore, that, regardless of the question of the validity of the orders for bridge and culvert construction, the Legislature has declared the bridge orders, at least, valid claims against the county. But appellant contends that the validating act does not cover claims for culvert construction; the language being, `contract for bridge construction or repair.' This brings us to the second question presented, the determination of which involves the construction of the validating act in connection, of course, with the other provisions of the statute of which, as an amendment, it forms a part. In view of our holding that the commissioners were authorized to anticipate the levy for the year 1918 in issuing the orders in question, and that such orders were valid, it will not be necessary to decide this question. In the opinion of the writer, however, the validating act is broad enough to cover both bridge and culvert construction for the reasons: (1) A culvert is easily within Webster's definition of a bridge:
 `A structure erected over a depression or an obstacle, as over a river, chasm, roadway, railroad, etc., carrying a roadway for passengers, vehicles,' etc.
 "Of course, a culvert, strictly speaking, is a conduit for passage of water, or a way, but with respect to its use in a highway may be, and generally is, a structure carrying a roadway — it bridges a chasm in the road. If the structure over a ditch consists of longitudinal stringers with planks across, it is a bridge. Is it any less a bridge, in a general sense, if it consisted of a box of four sides, laid transversely to the road? The primary object in each case is to carry the road over the ditch. (2) The other sections of the statute of which it forms a part deal with both kinds of improvements, both of which are to be paid for from the same fund, and the statute does not pretend to determine how much of such fund shall be devoted to the construction of bridges and how much to culverts, and the amount limited for bridges alone is therefore not determinable; (3) and while the validating act uses the term `bridges' only, it is dealing with the total fund, and the evident intent of the Legislature was to validate all contracts which might lawfully be paid out of such fund but for the fact that they were excessive. Appellant cites a number of cases involving construction of statutes, to the effect that a culvert is not a bridge, but they were all cases involving the liability of municipal corporations for damages by reason of defective bridges, calling for a strict construction of the statutes declaring liability; the statute in question is remedial and should receive a liberal construction." (Emphasis supplied)
It is our opinion that the statutory provisions in Chapter 242 providing for the organization of drainage districts organized in the circuit court and their powers and authorities given by statute should be liberally construed to effectuate the purpose for which they were enacted; and although ordinarily the word "bridge" is not synonymous with the word "culvert," we believe that it was the intent of the legislature in this statute to consider the word "bridge" in its broadest terms to include culverts. We think it is common knowledge that at the present time in modern methods of construction of highways frequently culverts are used instead of bridges. Under the same physical facts, years ago in many instances bridges would have been used. However, at the present time, culverts are frequently utilized because of the fact that in many situations culverts are not as expensive to build as bridges would be.
CONCLUSION
It is our opinion that the word "bridge," as used in Section242.350, RSMo, includes "culvert" and that drainage districts organized under the provisions of Chapter 242, RSMo, may utilize culverts rather than bridges where the drainage ditches of the district cross public roads.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Moody Mansur.
Yours very truly,
 JOHN ASHCROFT Attorney General